**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY WEBB, | ) | |
| | ) | No. 12 CV 6461 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| CHAUFFERS, TEAMSTERS AND | ) | |
| HELPERS, LOCAL UNION | ) | |
| NO. 301, PENSION FUND, | ) | |
| BOARD OF TRUSTEES, | ) | |
| | ) | March 18, 2013 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

In this action brought pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), Plaintiff Larry Webb seeks a disability pension from the trustees of a jointly administered multi-employer employee benefit plan ("the Plan") sponsored in part by Webb's former employer. The parties agree that Webb met two of the Plan's prerequisites for a disability pension: he was in covered service when he suffered a disabling injury and had completed at least five years of vesting credit at that time. Their dispute focuses on the meaning of the Plan's remaining statement of eligibility, specifically whether a participant must be at least 45 years old before suffering a disabling injury. Because the plain language of the Plan authorizes the trustees to interpret it subject only to arbitrary or capricious review, this court must determine whether the trustees' denial of Webb's application for a disability pension was arbitrary and

capricious. Each side filed a motion for summary judgment. For the following reasons, Webb's motion for summary judgment is denied and the trustees' motion for summary judgment is granted:

### Facts

Webb was born on July 21, 1965. (R. 22, Joint Facts, Exs. A, F.) He was 44 years old on December 2, 2009, when he suffered a work-related injury. (Id.) Webb applied for Social Security disability benefits claiming disability as of the date of his injury. (Id., Ex. C.) On May 4, 2012, an administrative law judge within the Social Security Administration ("SSA") found that Webb's injury rendered him disabled within the meaning of the Social Security Act as of December 2, 2009. (Id., Ex. C.)

Webb was, and is, a participant in the Teamsters Local 301 Pension Plan. (R. 22 at ¶ 1.) The Plan is a jointly administered multi-employer employee benefit plan. (Id. at ¶ 2.) Webb applied for a pension benefit from the Plan alleging that his last day worked was December 2, 2009, and that he was receiving Social Security disability benefits. (Id., Ex. A.) Article VI, Section 6.3 of the Plan, entitled "Eligibility for Disability Pension," states that a participant "who attains age 45 in Covered Service and who becomes totally and permanently disabled while employed in Covered Service (as defined in section 4.2(b))," shall be eligible to retire and receive a Disability Pension if two other preconditions are met. (Id., Ex. F.) The two remaining preconditions are not in dispute here: the parties agree that Webb was working in covered service within the meaning of the Plan and had accrued at least five years of vesting credit at the time of his disabling injury. (R. 7, Ans. at ¶ 5.)

2

A Plan administrator found Webb ineligible for a disability pension benefit. (R.22, Joint Facts, Ex. B.) The administrator explained that under Article VI, Section 6.3 of the Plan, eligibility is conditional on the participant meeting the following preconditions: he or she must have (1) "attained age 45 . . . while employed in Covered Service; and (2) became permanently disabled while employed in Covered Service (i.e. became disabled while working . . .), and (3) completed at least 5 years of Vesting Credit . . . , and (4) is entitled to Social Security disability benefits . . . ." (Id.) The Plan administrator denied Webb's application for a disability pension on the ground that he "did not become disabled after reaching age 45 while in covered service." (Id.)

In Webb's appeal to the Plan's trustees, he disputed the administrator's claim that he had not "attained age 45 or more while employed in covered service." (Id., Ex. D.) Webb argued that he "did not become disabled pursuant to the rulings of the Administrative Law Judge . . . until after . . . his 45th birthday." (Id., Ex. D.) The trustees were not persuaded by this logic, finding the relevant date for Webb's eligibility for benefits to be the date that Webb actually became disabled, not the date the SSA issued a decision finding Webb entitled to Social Security disability benefits. (Id., Ex. F.) Because SSA had concluded that Webb ceased "substantial gainful activity" on December 2, 2009, when he was 44 years old, the trustees found that Webb was not 45 years old at the time he became disabled and was therefore ineligible for benefits under Article VI, Section 6.3. (Id.)

The trustees reminded Webb that Article VI, Section 6.7 of the Plan states that the trustees shall "be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan," and their decision "on review shall be binding . . . except to the extent that such decision may be determined to be arbitrary or capricious by a court having jurisdiction over the matter." (Id., Ex. F.)

Webb sued the Plan's trustees in state court pursuant to Section 502 of ERISA, 29 U.S.C § 1132(a)(1)(B). (R. 1, Ex. 1.) The trustees timely removed the suit to this court pursuant to 29 U.S.C. §§ 1331 and 1441(a). (R. 1.) The parties consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) for all proceedings, including the entry of final judgment. (R. 16.) The parties filed a joint Local Rule 56.1 Statement of Undisputed Material Facts, (R. 22), and followed with cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Webb's summary judgment papers asserted that he met the Plan's prerequisites for a disability pension because he remained in covered service for a year following his injury, through his 45th birthday. Webb asserted that he established his covered service status through a "progressive discipline letter" from his employer, Groot Industries, which stated that "Effective 12/3/10 you have been off work due to injury for 12 consecutive months. According to the union contract, your employment with Groot industries is terminated." (R. 24, Ex. 1.) Webb supplied this letter with a copy of Section 4.2 of the Plan, which defines "Covered Service," in a supplemental statement of material facts. (Id., Exs. 1, 2.) The

4

trustees moved to strike Webb's statement of material facts and attached exhibits because Webb had not submitted the Groot letter or Section 4.2 to the trustees with his application for benefits. (R. 27.) The trustees argued that these documents were irrelevant because they were not part of the administrative record.

The trustees also moved for summary judgment contending that their decision denying Webb's application for benefits was neither arbitrary nor capricious because Webb was not 45 years old at the time of the disabling event and therefore was not eligible for benefits under the Plan.

## Analysis

When the administrator of a pension plan regulated by ERISA is "vested with discretionary authority to interpret the Plan's provisions and to determine eligibility for and entitlement to Plan benefits, we will only look to ensure that [the administrator's] decision has rational support in the record." *Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 885 (7th Cir. 2012) (internal quotations and citations omitted). Here, the plain language of the Plan endows the trustees with the responsibility to be "the sole judges of the standard of proof required in any case and the application and interpretation of this Plan" except "to the extent that such decision may be determined to be arbitrary or capricious by a court having jurisdiction." (R. 22, Joint Facts, Ex. F.) The parties agree that this language limits this court's review of the trustees' decision to a deferential arbitrary and capricious standard. (R. 15, Joint Initial Status Rep. at 2; R. 23, Pl.'s Mot. at 3; R. 26, Defs.' Mem. at 5.)

5

Under an arbitrary and capricious standard, "an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language." *Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 329 (7th Cir. 2011) (quoting *Wetzler v. Illinois CPA Soc'y & Found. Ret. Income Plan,* 586 F.3d 1053, 1057 (7th Cir. 2009)). This court will uphold the trustees' decision if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Speciale v. Blue Cross and Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008). "Before condemning a decision as arbitrary or capricious a court must be very confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence." *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985) (overruled on other grounds by *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, (1989)).

This court reviews Webb's challenge to the trustees' decision on cross-motions for summary judgment. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On review of cross-motions for summary judgment, we view all facts and inferences in the light most

6

favorable to the nonmoving party on each motion." *Wisconsin Alumni Research Found. v. Xenon Pharm., Inc.*, 591 F.3d 876, 882 (7th Cir. 2010).

To evaluate whether the trustees' decision has "rational support in the record," *see Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009), this court must look to "the evidence that was submitted in support of the application for benefits," *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999). The parties agree that the administrative record consists of at least Webb's application for a pension benefit, the SSA decision granting Webb certain government benefits, the Plan administrator's letter finding Webb ineligible for benefits, Webb's letter appealing that decision, the administrator's letter confirming receipt of Webb's appeal, and the trustees' attorney's letter to Webb rejecting his appeal. (R. 22, Joint Facts, at ¶ 12.) Also in the record is the Plan document itself, or at least Article VI, Sections 6.3 and 6.7, as those were referenced by the trustees in their communications with Webb.

Article VI, Section 6.3 of the Plan, entitled "Eligibility for Disability Pension," states that a participant "who attains age 45 in Covered Service and who becomes totally and permanently disabled while employed in Covered Service (as defined in section 4.2(b))," shall be eligible to retire and receive a Disability Pension if certain other preconditions not at issue here are met. (R. 22, Joint Facts, Ex. F.) The trustees read this provision to require that a participant must first celebrate his 45th birthday while in covered service *before* becoming disabled: "Mr. Webb did not

7

meet the eligibility requirements of Article VI, Section 6.3 . . . in that he was not 45 on December 2, 2009, the date when the SSA determined him to be totally and permanently disabled." (Id.) The trustees argue that their interpretation conforms to the natural flow of the language—the first condition in the sequence is attaining age 45, and the second is becoming totally disabled. Requiring a participant to experience the qualifying events in the sequence that the Plan's language sets forth is, in their view, a reasonable explanation of their interpretation of the relevant portion of the Plan.

Webb counters that the trustees' reading of Article VI, Section 6.3 is arbitrary or capricious because it adds a third eligibility requirement that is not clearly stated in the text—that a participant must meet the prerequisites for eligibility in succession. Webb argues that Article VI, Section 6.3 should be read to present two eligibility requirements that are unrelated, independent, and whose order in the text is immaterial. Webb's reading would allow a participant to receive benefits if he or she became totally disabled while in covered service at any age, so long as he or she remained in covered service at age 45. Webb considers the trustees' interpretation to be a misstatement of the Plan's terms.

This court is not at liberty to overturn the trustees' decision on the basis that Webb suggests. Webb's claim that ambiguous terms should be construed in his favor, *see Cannon v. Wittek Co.*, 60 F.3d 1282, 1284 (7th Cir. 1995), does not apply here because the Plan authorizes the trustees to interpret its terms, s*ee Becker*, 691 F.3d at 890 ("Although our interpretation of plan language is governed by federal

8

common law, the common law rule of *contra proferentem*—that ambiguities in a contract are to be construed against the drafter—does not apply in the ERISA context when the plan authorizes a plan administrator to interpret its terms."). Rather, "[r]esolving how the terms relate to one another calls for a detailed interpretative process, and ERISA permits that process to be entrusted to the [Plan administrator]." *Frye v. Thompson Steel Co., Inc.,* 657 F.3d 488, 495 (7th Cir. 2011). When "Plan language is sufficiently ambiguous," the trustees' interpretation "is entitled to deferential consideration by a reviewing court." *Becker*, 691 F.3d at 893 (internal quotations omitted); *see also Tompkins v. Central Laborers' Pension Fund*, No. 12-1995, slip op. at 13 (7th Cir. Mar. 13, 2013) ("Because of that ambiguity, the Fund's interpretation . . . is entitled to deference."). In this case, Webb has not met his burden of showing that the trustees' interpretation of the text lacked a "reasonable interpretation of the plan's language." *See Wetzler,* 586 F.3d at 1057 (7th Cir. 2009). If anything, it is Webb's reading that is less reasonable, as it calls for a reversal of the sequence of the text and ignores the bridge between the two eligibility requirements at issue—"and who becomes"—which implies that the first requirement must precede the second.

Having found that the trustees' interpretation of Article VI, Section 6.3 of the Plan "is based on a reasonable explanation of relevant plan documents," *see Speciale*, 538 F.3d at 621, this court proceeds to the trustees' evaluation of Webb's eligibility under that rubric. The trustees explained in a letter rejecting Webb's appeal that they had determined that he "was not 45 as of the date of his disability

as evidenced by a SSA disability award," and further explained that "the date on which the disability pension applicant is determined to be disabled" is "the operative date consistent with the provisions of the Plan." (R. 22, Joint Facts, Ex. F.) Webb concedes that he was 44 years old when the disabling injury occurred and does not challenge this aspect of the trustees' analysis. Rather, he focuses on establishing that he remained in covered service through his 45th birthday, an argument that has no relevance because the trustees' interpretation of Article VI, Section 6.3 stands, and that interpretation requires a participant to be 45 before becoming disabled.

Because the trustees' conclusion that a participant must satisfy the eligibility prerequisites in sequential order withstands deferential review, and because the trustees did not "overlook[ ] something important or seriously err[ ] in appreciating the significance of the evidence," *Pokratz,* 771 F.2d at 209, when determining that Webb, at age 44 at the time of disabling injury, could not meet that burden, this court must uphold the trustees' decision. Thus, this court need not reach the questions posed by Webb's motion for summary judgment, such as his allegation that he remained in covered service through his 45th birthday. Nor must this court decide whether the evidence Webb submitted in support of that claim violates the rule articulated in *Perlman*—that this court must limit its review to documents submitted in support of Webb's pension benefit application—or whether that evidence would have been reviewable subject to the requirements of Local Rule 56.1.

## Conclusion

For the foregoing reasons, Webb's motion for summary judgment is denied and the trustees' motion for summary judgment is granted.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**